KELLY McCLANAHAN, APPELLANT, *v.*
RALEY'S, INC., RESPONDENT.

No. 35906

November 21, 2001 34 P.3d 573

*Kay Ellen Armstrong,* Carson City, for Appellant.

*Piscevich & Fenner,* Reno, for Respondent.

Before SHEARING, AGOSTI and ROSE, JJ.

## OPINION

*Per Curiam:*

This case arises out of a contested workers' compensation claim. The question presented on appeal is whether the district court improperly reweighed the evidence and substituted its judgment for that of the administrative appeals officer. We conclude that the district court did usurp the appeals officer's function, and we therefore reverse the district court's order.

On July 29, 1997, appellant Kelly McClanahan, then twenty-nine years old and a ten-year employee of respondent Raley's, Inc., slipped and fell on a wet concrete floor in the meat department at Raley's in Fallon. At the time of his fall, McClanahan was holding a lugger, or tray, of beef weighing approximately forty-five pounds. Because he was holding the lugger of beef, McClanahan was unable to break his fall. As a consequence, McClanahan landed on his left hip, and the lugger of beef landed on the lower half of his body.

As a result of the fall, McClanahan experienced some soreness in his left hip. Despite the soreness, McClanahan finished his shift and did not seek medical treatment that day. In fact,

McClanahan did not seek medical treatment until March 1998, almost eight months later. McClanahan sought medical treatment because the soreness in his left hip began to worsen, and because family members noticed a limp and encouraged him to see a doctor.

On March 26, 1998, McClanahan was examined by Allen M. Schnaser, M.D. Dr. Schnaser diagnosed McClanahan with avascular necrosis,[1] and informed McClanahan that he would eventually need hip replacement surgery. Dr. Schnaser also informed McClanahan that his condition was idiopathic, meaning that the cause was unknown, and not related to his fall at work.

On April 20, 1998, McClanahan sought a second medical opinion from Reed A. Burch, M.D. Dr. Burch confirmed Dr. Schnaser's diagnosis of avascular necrosis, but Dr. Burch disagreed with Dr. Schnaser regarding its cause. Dr. Burch concluded that the avascular necrosis was the result of the trauma McClanahan experienced when he slipped and fell directly onto his left hip almost nine months earlier.

Because Dr. Schnaser and Dr. Burch disagreed regarding causation, McClanahan and Raley's agreed that Eric Boyden, M.D., would conduct an independent medical examination to provide an additional opinion regarding causation. Dr. Boyden examined McClanahan on November 9, 1998, and concluded that McClanahan's avascular necrosis was a direct consequence of his fall at work, and was not idiopathic.

On or about March 17, 1999, Raley's sought a fourth medical opinion regarding causation from Stuart Goodman, M.D. Dr. Goodman did not personally examine McClanahan; rather, Dr. Goodman conducted a record review of McClanahan's medical history. After reviewing McClanahan's medical records, Dr. Goodman concluded that the avascular necrosis was idiopathic, and not related to the fall.

McClanahan filed a workers' compensation claim with Raley's, a self-insured employer. McClanahan's claim was denied, and a hearing officer affirmed the denial. McClanahan appealed the denial and, on appeal, the appeals officer concluded that the claim must be accepted.

As to whether McClanahan's injury was compensable, the appeals officer noted that two doctors related McClanahan's condition to his fall at work, and two doctors did not. The appeals officer decided to give greater evidentiary weight to the opinions of the two doctors who attributed McClanahan's injury to his fall

---

[1]Avascular necrosis, also known as osteonecrosis, is defined as "the destruction and death of bone tissue, as caused by not enough blood (ischemia), infection, cancer, or injury." *The Mosby Medical Encyclopedia* 530 (1985).

at work, because they had personally examined him. Concluding that McClanahan's avascular necrosis was directly related to his fall at work, the appeals officer determined that the injury was compensable. Raley's then petitioned for judicial review in the district court.

In its petition, Raley's urged the district court to reverse the appeals officer's decision because it was not supported by substantial evidence. Moreover, Raley's asserted that the appeals officer arbitrarily and capriciously applied the "treating physician rule." According to Raley's, the treating physician rule favors the employee at the expense of the employer and, therefore, application of such a rule violated NRS 616A.010(4), which mandates a neutral interpretation of the workers' compensation laws, rather than a liberal interpretation in favor of the injured employee.

The district court granted Raley's petition and reversed the appeals officer's decision. In particular, the district court found that the appeals officer's conclusion in favor of McClanahan was clearly erroneous based on the factual findings. Further, the district court determined that the appeals officer had applied the treating physician rule and, in doing so, violated NRS 616A.010(4).

McClanahan appeals to this court, asserting that the appeals officer's decision was supported by substantial evidence, and that the district court erred by reweighing the evidence and substituting its judgment for that of the appeals officer. Moreover, McClanahan argues that the appeals officer did not rely on the treating physician rule, and therefore did not violate the mandate of NRS 616A.010(4). According to McClanahan, the appeals officer did not favor either party; rather, the appeals officer examined all of the evidence and made the factual determination that McClanahan's fall caused his avascular necrosis.

We must determine whether the appeals officer's final decision was based on substantial evidence.[2] If so, "neither this court, nor the district court, may substitute its judgment for the administrator's determination."[3] "Substantial evidence has been defined as that which 'a reasonable mind might accept as adequate to support a conclusion.'"[4]

---

[2]*See Bally's Grand Hotel & Casino v. Reeves,* 113 Nev. 926, 935-36, 948 P.2d 1200, 1206 (1997) (stating that an agency's decision will only be affirmed if there is substantial evidence to support the decision).

[3]*State, Emp. Security v. Hilton Hotels,* 102 Nev. 606, 607-08, 729 P.2d 497, 498 (1986).

[4]*Id.* at 608, 729 P.2d at 498 (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938))); *accord State, Emp. Sec. Dep't v. Holmes,* 112 Nev. 275, 280, 914 P.2d 611, 614 (1996).

In this case, Raley's argues that the appeals officer's decision was not supported by substantial evidence such that a reasonable person could conclude that McClanahan's avascular necrosis resulted from his fall at work. Raley's contends that McClanahan failed to establish, by a preponderance of the evidence, that his injury was work-related.[5] Because two doctors concluded that McClanahan's condition was idiopathic, and not related to his fall, and two doctors concluded that his condition was the result of his fall at work, Raley's asserts that there was a "two-to-two tie" of the medical experts. According to Raley's, the two-to-two tie does not establish, by a preponderance of the evidence, that McClanahan's avascular necrosis resulted from his fall at work.

We conclude that the appeals officer's decision is supported by substantial evidence such that a reasonable mind could conclude that McClanahan's avascular necrosis resulted from his fall at work. First, two orthopaedic surgeons personally examined McClanahan and concluded that the avascular necrosis was a direct consequence of his fall at work. Second, McClanahan testified at the hearing and described the progressive deterioration of his left hip following the fall. Additionally, McClanahan's wife and his supervisor both confirmed the deterioration, as well as a limp that became noticeable only after the fall at work. The appeals officer specifically found McClanahan, his wife and his supervisor to be credible witnesses, and "[a]n administrative agency's decision based on a credibility determination is not open to appellate review."[6] Therefore, the appeals officer's decision was supported by substantial evidence.

In so concluding, we note that the "preponderance of the evidence" burden set forth in NRS 616C.150(1) does not require an injured worker to offer a greater number of expert witnesses who express opinions in his favor to establish that an injury arose "out of and in the course of his employment." Rather, "preponderance of the evidence" merely refers to "[t]he greater weight of the evi-

---

[5]See NRS 616C.150(1), which provides as follows:

An injured employee or his dependents are not entitled to receive compensation pursuant to the provisions of chapters 616A to 616D, inclusive, of NRS unless the employee or his dependents establish by a preponderance of the evidence that the employee's injury arose out of and in the course of his employment.

[6]*Langman v. Nevada Administrators, Inc.,* 114 Nev. 203, 209, 955 P.2d 188, 192 (1998).

dence.''[7] This court has previously stated that an equal number of witnesses on each side does not constitute a balance of evidence.[8]

Raley's also argues that the appeals officer arbitrarily and capriciously applied the common law treating physician rule to break the two-to-two tie between the medical experts. The treating physician rule exists at common law, but has not been addressed by this court. It provides that the trier of fact must give the treating physician's medical opinion deference, and if it is not contradicted, the trier of fact should give it complete deference.[9] Raley's asserts that the application of such a rule violates NRS 616A.010(4),[10] which mandates a neutral, rather than a liberal, interpretation of the workers' compensation laws.

The rationale given for the rule is that ''[t]he treating physician has had a greater opportunity to examine and observe the patient. Further, as a result of his duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians.''[11]

Nevertheless, we question the premises upon which the treating physician rule rests. We do not agree that because a physician has a duty to cure a patient that the physician will necessarily be more familiar with an issue such as the cause of an injury. An ability

---

[7]*Black's Law Dictionary* 1201 (7th ed. 1999).

[8]*Dixon v. Miller,* 43 Nev. 280, 284, 184 P. 926, 929 (1919).

[9]*See Walker v. Secretary of Health and Human Serv.,* 980 F.2d 1066, 1070 (6th Cir. 1992).

[10]NRS 616A.010 states as follows:

The legislature hereby determines and declares that:

 1. The provisions of chapters 616A to 617, inclusive, of NRS must be interpreted and construed to ensure the quick and efficient payment of compensation to injured and disabled employees at a reasonable cost to the employers who are subject to the provisions of those chapters;

 2. A claim for compensation filed pursuant to the provisions of chapters 616A to 616D, inclusive, or chapter 617 of NRS must be decided on its merit and not according to the principle of common law that requires statutes governing workers' compensation to be liberally construed because they are remedial in nature;

 3. The provisions of chapters 616A to 617, inclusive, of NRS are based on a renunciation of the rights and defenses of employers and employees recognized at common law; and

 4. For the accomplishment of these purposes, the provisions of chapters 616A to 617, inclusive, of NRS must not be interpreted or construed broadly or liberally in favor of an injured or disabled employee or his dependents, or in such a manner as to favor the rights and interests of an employer over the rights and interests of an injured or disabled employee or his dependents.

[11]*Walker,* 980 F.2d at 1070; *see also Snyder v. San Francisco Feed & Grain,* 748 P.2d 924, 931 (Mont. 1987).

to reliably identify the cause of an injury may be less a product of familiarity with a patient and more the product of specialized skill, training and experience. We recognize that physicians commonly rely not solely upon their own observations but upon the expertise of other physicians with particular specialties when trying to resolve questions such as diagnosis of a condition and causation of an injury. Under these circumstances physicians may send the patient's records to another physician for review or the patient may be referred by the treating physician to be examined by a specialist. Additionally, a treating physician will not necessarily have spent more time with a patient than a physician who has been consulted for a second opinion. Even if a treating physician has spent more time with the patient, we do not view the quantity of time spent as a reason to give greater weight to that physician's opinion. The medical issue may be too complicated to resolve based solely upon the treating physician rule's supposition that the treating physician has spent more time with the patient than any other doctor. It is for these reasons that we reject the treating physician rule and determine that it has no applicability in this state.

We conclude, however, that the appeals officer did not apply the treating physician rule to break a two-to-two tie between the medical experts. If he had, he would have given greater deference to Dr. Schnaser's opinion. Dr. Schnaser, McClanahan's treating physician, rendered an opinion that was not helpful to McClanahan's case as Dr. Schnaser determined the cause of the injury to be idiopathic and unrelated to McClanahan's fall. Also, the appeals officer considered all of the evidence and decided to give greater evidentiary weight to the opinions of the two specialists who related McClanahan's condition to his fall at work because they had personally examined him. Specifically, the appeals officer concluded as follows:

> There is a legitimate dispute concerning the causation of the avascular necrosis in [McClanahan's] hip. However, in this circumstance, I give greater weight to the testimony and opinion of the treating physicians, since they have personally examined [McClanahan]. Both Dr. Burch in his report, and Dr. Boyden in his testimony, excluded other causes, including any idiopathic cause, for [McClanahan's] condition. Their reports and testimony are relied upon to determine medical causation in this case. See also: discussion on testimony of treating physician and experts, in 8 Larson's Workers Compensation Law Sec. 80.24(b) (Nov. 1998).

Such weighing of the evidence is a proper responsibility of the fact finder and is permissible under NRS 616A.010. The appeals officer's decision to accord greater weight to two experts who had personally examined McClanahan is not tantamount to applying the treating physician rule.[12]

In sum, we conclude that the appeals officer's decision was supported by substantial evidence, and that the district court erred by substituting its judgment for that of the appeals officer upon judicial review. The opinions of two of the doctors who had personally examined McClanahan, and the testimony of McClanahan, his wife and his supervisor, which was deemed credible by the appeals officer, constitute substantial evidence upon which the appeals officer was entitled to rely in determining that McClanahan had proved his entitlement to compensation by a preponderance of the evidence.

Further, we conclude that the district court erred when it found that the appeals officer improperly applied the treating physician rule in violation of NRS 616A.010(4). The appeals officer considered all of the evidence and decided to give greater evidentiary weight to the opinions of the two doctors who related McClanahan's condition to his fall at work because they had personally examined him. Such weighing of conflicting evidence is permissible and desirable under NRS 616A.010(4), and is not tantamount to applying the treating physician rule.

Accordingly, we reverse the district court's order granting the petition for judicial review and reversing the appeals officer's decision.

---

[12]Tangentially, we note that the appeals officer's description of the two doctors who personally examined McClanahan as "treating physicians" is misplaced. In the context of the treating physician rule, the treating physician is charged with the duty to treat the patient. In furtherance of that duty, the treating physician generally treats the patient for an extended period of time and becomes thoroughly familiar with the patient's disability. Here, one doctor personally examined McClanahan once, the other doctor examined him twice. Neither doctor was enlisted to "treat" McClanahan's avascular necrosis; rather, the doctors were asked to diagnose his condition.