An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

## IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF THE PARENTAL RIGHTS AS TO: I.G.C.

CLARK COUNTY DEPARTMENT OF FAMILY SERVICES,
Appellant,
vs.
MARITES C.; AND TRAVIS C.,
Respondents.

No. 65766

FILED

SEP 2 8 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY ___S. Young___
DEPUTY CLERK

### ORDER OF AFFIRMANCE

This is an appeal from a district court order denying a petition to terminate parental rights. Eighth Judicial District Court, Family Court Division, Clark County; Robert Teuton, Judge.

Appellant Clark County Department of Family Services (DFS) argues on appeal that the district court erred in preserving the parental rights of respondents Marites C. and Travis C. because preservation of parental rights is not in the best interests of the child, I.G.C., and parental fault exists as towards both parents. We reject these arguments and affirm the district court order denying the petition to terminate parental rights.

*Standard of review*

This court reviews a district court's factual findings for an abuse of discretion, and those findings will not be set aside unless they are "clearly erroneous and [not] supported by substantial evidence." *Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009). Substantial evidence is evidence that "'a reasonable mind might accept as adequate to support a conclusion.'" *Finkel v. Cashman Prof'l, Inc.*, 128 Nev., Adv. Op. 6, 270

15-29335

P.3d 1259, 1262 (2012) (quoting *McClanahan v. Raley's, Inc.*, 117 Nev. 921, 924, 34 P.3d 573, 576 (2001)).

*Termination of parental rights*

"A party petitioning to terminate parental rights must establish by clear and convincing evidence that (1) termination is in the child's best interest, and (2) parental fault exists."[1] *In re Parental Rights as to A.J.G.*, 122 Nev. 1418, 1423, 148 P.3d 759, 762 (2006); NRS 128.105. Because "terminating parental rights is an exercise of awesome power that is tantamount to imposition of a civil death penalty," the district court's determination of whether it "properly preserved or terminated the parental rights at issue" is subject to close scrutiny. *Id.* at 1423, 148 P.3d at 763 (internal quotations omitted) (quoting *In re Termination of Parental Rights as to N.J.*, 116 Nev. 790, 795, 8 P.3d 126, 129 (2000)).

NRS 128.109(2) creates a rebuttable presumption that the child's best interests are served by terminating parental rights if the child has been placed outside the home for 14 of any 20 consecutive months. "To rebut NRS 128.109's presumptions, the parent must establish by a preponderance of the evidence that . . . termination is not in the children's

---

[1]Although the district court found parental fault as to Travis pursuant to several of the conditions set forth in NRS 128.106, DFS argues that the district court erred by failing to also find parental fault as to Travis for neglect pursuant to NRS 128.105(2)(b) and NRS 128.014, and failing to find parental fault as to Marites on any grounds pursuant to 128.105(2). However, termination of parental rights requires a finding of parental fault *and* a finding that termination is in the child's best interests. *In re A.J.G.*, 122 Nev. at 1423, 148 P.3d at 762; NRS 128.105. Because we agree with the district court's determination that terminating parental rights in this case was not in the best interests of I.G.C., we need not address the issue of parental fault.

best interests." *In re Parental Rights as to A.L.*, 130 Nev., Adv. Op. 91, 337 P.3d 758, 761 (2014). We have previously stated that a "'preponderance of the evidence' merely refers to '[t]he greater weight of the evidence.'" *McClanahan*, 117 Nev. at 925-26, 34 P.3d at 576 (alteration in original) (quoting *Black's Law Dictionary* 1201 (7th ed. 1999)).

Here, the district court found that the statutory presumption that termination of parental rights as to Marites and Travis was in I.G.C.'s best interests applied because I.G.C. had been out of the home for 27 consecutive months, which is well beyond the period set forth in NRS 128.109(2). As a result of this presumption, the burden shifted to Marites and Travis to demonstrate by a preponderance of the evidence that their parental rights should not be terminated. The district court concluded that both Marites and Travis had rebutted the presumption, and therefore preserving the parental rights of both parents was in I.G.C.'s best interests. We agree.

*The district court did not err by concluding that it is in the best interests of I.G.C. to preserve Marites' and Travis' parental rights*

DFS argues that the district court's findings and conclusions for preserving parental rights were not in I.G.C.'s best interests because: (1) Travis' conduct shows he is an unfit parent, and Marites continues to believe Travis does not pose a risk to I.G.C.; (2) the district court placed too much weight on Marites' bond with I.G.C.; (3) the district court placed too much focus on financial considerations; and (4) the district court erred by considering the lack of an adoptive home. This court "presume[s] that the district court properly exercised its discretion in determining the best interests of the child," *Flynn v. Flynn*, 120 Nev. 436, 440, 92 P.3d 1224, 1226-27 (2004), and "will not substitute its own judgment for that of the

district court" when the district court's order is supported by substantial evidence. *In re N.J.*, 116 Nev. at 795, 8 P.3d at 129.

NRS Chapter 128 provides several factors for the district court to consider when evaluating the child's best interests and termination of parental rights. NRS 128.105 ("An order of the court for the termination of parental rights must be made in light of the considerations set forth in this section and NRS 128.106 to 128.109 . . . ."); *see Rico v. Rodriguez*, 121 Nev. 695, 701, 120 P.3d 812, 816 (2005). "The termination statute sets forth factors to be considered in determining the best interests of the child[, particularly] . . . that the 'continuing needs of a child for proper physical, mental, and emotional grown and development are the decisive considerations in proceedings for termination of parental rights.'" *In re N.J.*, 116 Nev. at 800, 8 P.3d at 132-33 (*quoting* NRS 128.005(2)(c)). This court has stated that "[a]lthough the best interests of the child and parental fault are distinct considerations, the best interests of the child necessarily include considerations of parental fault and/or parental conduct." *Id.* at 801, 8 P.3d at 133.

*Travis' conduct and Marites' support*

DFS argues that the district court erred in its best-interest analysis by failing to consider Travis' conduct and Marites' refusal to recognize Travis as a danger to I.G.C. Although DFS cites to cases from other jurisdiction to support its argument, we determine that those cases are distinguishable and thus inapplicable here.[2]

_____

[2]See, e.g., In re J.D.A., 598 S.E.2d 842, 843-44 (Ga. Ct. App. 2004) (affirming termination of parental rights when an infant suffered multiple broken bones while in the custody of both parents and the causes of the injuries went unexplained); In re J.V., 526 S.E.2d 386, 392-93 (Ga. Ct. App. 1999) (same); In re Ellis, 817 N.W.2d 111, 112-13 (Mich. Ct. App. *continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

As part of its best-interests analysis, the district court found that Marites would quit work to care for I.G.C, and that I.G.C.'s safety could be appropriately maintained by Marites. *See In re N.J.*, 116 Nev. at 800, 8 P.3d at 132-33 (a child's physical needs are proper considerations in the best interest analysis). Because substantial evidence supports the district court's factual findings, we conclude that the district court's analysis was not in error.

*Marites' strong and loving bond with I.G.C.*

DFS next contends that the district court's finding that Marites has a strong and loving bond with I.G.C. was an improper consideration when analyzing I.G.C.'s best interests. It reasons that the court improperly considered the best interests of Marites rather than I.G.C., and that I.G.C. is incapable of bonding due to his neurological impairments. This contention is flawed.

A mother's loving bond with her child is clearly relevant to the child's best interest. *See In re Parental Rights of J.L.N.*, 118 Nev. 621, 626, 55 P.3d 955, 958 (2002) (considering the "strong, loving bond" between the parent and child when assessing the best interests of a child).

---

*...continued*

2011) (same); In re Interest of Natasha H., 602 N.W.2d 439, 449 (Neb. 1999) (affirming termination of parental rights for both parents following the abuse of a child by the father because, although the mother was not accused of abuse, the mother was "psychologically dependent" on the father and was thus "unable to protect her children from the threat he represent[ed]"); In re E.T.M., 279 P.3d 306, 313 (Or. Ct. App. 2012) (affirming termination of parental rights as to both parents because, while the mother did not abuse the child, she was unfit as a parent due to her "unwavering allegiance" to the father caused by the mother's mental condition).

And the district court is in the best "position to observe the demeanor of the parties and weigh their credibility." *In re Parental Rights as to C.J.M.*, 118 Nev. at 732, 58 P.3d at 194. Here, not only did the district court observe Marites' demeanor when testifying during various court proceedings, but the court took note of a report for permanency and placement prepared by DFS in which DFS also observed the bond Marites had formed with I.G.C. Accordingly, we conclude that the district court's consideration of such a bond was appropriate, and there is substantial evidence to support that such a bond exists.

*Financial considerations*

DFS further contends that in considering I.G.C.'s best interests the district court placed too much weight on the parents' financial ability to help with I.G.C.'s care. We conclude that this argument is without merit.

The district court noted in its order that Marites and Travis have provided financial support to reimburse the foster parents for some of I.G.C.'s expenses, including bedding and clothing, as well as Travis's ability to provide supplemental health care insurance for I.G.C.'s medical expenses. Whether the parents have "provide[d] the child with adequate food, clothing, shelter, education or other care and control necessary for the child's physical, mental and emotional health and development" are proper considerations in the best interest analysis. NRS 128.106(5); *see* NRS 128.105 (incorporating NRS 128.106 through 128.109 into the termination analysis); *In re N.J.*, 116 Nev. at 801, 8 P.3d at 133 (discussing the application of NRS 128.106 in a best interest analysis). Therefore, the district court properly considered the parents' financial support of I.G.C.

*The absence of a meaningful relationship between the child and an adoptive resource*

DFS next argues that the district court mistakenly determined that it could consider the absence of a meaningful relationship between I.G.C. and an adoptive resource when deciding whether termination of parental rights was in I.G.C.'s best interests. We disagree.

NRS 128.108 requires the district court to consider certain factors before a placement is finalized when a child has been placed in a foster home and the foster parents become prospective adoptive parents. One factor the court must consider is the bond formed between the child and prospective adoptive family as compared to that between the child and biological parents. NRS 128.108(1). Although I.G.C.'s foster parent was not considering adoption, the statute does not prohibit the district court's consideration of the mother-son bond. Because I.G.C. remained with the foster parent at the time the district court took the matter under submission, we conclude that the district court did not err in considering whether a meaningful relationship exists between I.G.C. and the adoptive resource.

We conclude that the district court properly evaluated I.G.C.'s best interests, that Marites and Travis "establish[ed] by a preponderance of the evidence that . . . termination is not in the children's best interests," *In re A.L.*, 130 Nev., Adv. Op. 91, 337 P.3d at 761, and that DFS failed to establish by clear and convincing evidence that terminating the parental rights of Marites and Travis was in I.G.C.'s best interests. *See In re Parental Rights as to A.J.G.*, 122 Nev. 1418, 1423, 148 P.3d 759, 762 (2006); *see also* NRS 128.105. Accordingly, because the district court's order is "not clearly erroneous and [is] supported by substantial evidence," *Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009), we

ORDER the judgment of the district court AFFIRMED.

_____ J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

cc:  Hon. Robert Teuton, District Judge, Family Court Division
     Clark County District Attorney/Juvenile Division
     Aaron Grigsby
     Special Public Defender
     Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A